**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------ X

GEHAD ELSAYED and LAILA IBRAHIM,
on behalf of themselves and others
similarly situated,

                                        Plaintiffs,                        No. 18-CV-10566 (RWS)

           - against -

CITY OF NEW YORK; NYPD Officer CHENISE
BRODIE (Shield No. 28113); and NYPD Officers
John and Jane Doe # 1, 2, 3, etc.,

                                        Defendants.

------------------------------------------------------------------------ X

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
THE STATE DEFENDANTS' PARTIAL MOTION TO DISMISS
THE AMENDED COMPLAINT**

BELDOCK LEVINE & HOFFMAN LLP
99 Park Avenue, PH/26th Floor
New York, New York 10016
(212) 490-0400
*Attorneys for Plaintiff*

## TABLE OF CONTENTS

I. PRELIMINARY STATEMENT .................................................................................1

II. STATEMENT OF FACTS......................................................................................1

    1. NYPD's Photographic Unit Standard Operating Procedures ............................2

    2. Searches at Police Facilities................................................................................3

    3. Gehad Elsayed ....................................................................................................3

    4. Laila Ibrahim .......................................................................................................4

III. LEGAL STANDARD..............................................................................................4

IV. ARGUMENT ............................................................................................................6

    Point I: PLAINTIFFS HAVE STANDING TO PURSUE INJUNCTIVE AND
    DECLARATORY RELIEF ARGUMENT ...........................................................6

        A. Standing, Generally.........................................................................................6

        B. The Prospect of Future Harm to Plaintiffs is Not Speculative, but Real and Imminent .6

        1. Ms. Elsayed's Repeated Arrests Confer Standing for Injunctive Relief ...................6

        2. The Likelihood of Future Harm is Actual......................................................8

    Point II: PLAINTIFFS' RLUIPA CLAIMS MUST SURVIVE............................9

        A. Plaintiffs' RLUIPA Claims are Not Moot ...................................................9

    Point III: PLAINTIFFS HAVE ADEQUATELY ALLEGED THAT NYPD'S
    PHOTOGRAPH POLICY VIOLATES THEIR CONSTITUTIONAL RIGHTS...............12

        A. NYPD's Photograph Policy is Not Reasonably Related to a Legitimate Penological
        Interest........................................................................................................13

        B. Even If Rational Basis Applies, the Policy is Not Reasonably Related to a Recognized
        City Interest.................................................................................................14

    Point IV: PLAINTIFFS ADEQUATELY PLED INTENTIONAL INFLICTION OF
    EMOTIONAL DISTRESS UNDER NEW YORK STATE LAW ......................17

        A. Plaintiffs Can Claim that the Individual Officers Caused IIED....................17

Point V: THE INDIVIDUAL DEFENDANTS ARE NOT IMMUNE FROM PUNITIVE DAMAGES.................................................................................................................20

V. CONCLUSION.......................................................................................................................21

**TABLE OF AUTHORITIES**

**Cases**

*Aegis Ins. Servs., Inc. v. 7 World Trade Co.*, 737 F.3d 166 (2d Cir. 2013) .................................... 5

*Aguilar v. Immigration & Customs Enforcement Div. of the United States Dep't of Homeland Sec.*, 811 F. Supp. 2d 803 (S.D.N.Y. 2011) ............................................................ 7, 8

*Anderson v. City of N.Y.*, No. 1:16-cv-01051 (GBD) (KHP), 2017 U.S. Dist. LEXIS 8358 (S.D.N.Y. Jan. 19, 2017)........................................................................ 20

*Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010) ........................................ 5

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................ 5

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................ 5, 6

*Boykin v. KeyCorp*, 521 F.3d 202 (2d Cir. 2008) ........................................ 5

*Burns v. Martuscello*, 890 F.3d 77 (2d Cir. 2018) ........................................ 12

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck—Medco Managed Care, L.L.C.*, 504 F.3d 229 (2d Cir. 2007)........................................................................ 7

*Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520 (1993) ..................................... 12

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ........................................ 8

*Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302 (S.D.N.Y. 2014) ..................................... 5

*Davis v. Fed. Election Comm'n*, 554 U.S. 724 (2008)........................................ 8

*Doe v Doe*, No. 16 Civ. 0332 (NSR), 2017 U.S. Dist. LEXIS 109692, 2017 WL 3025885 (S.D.N.Y July 14, 2017) ............................................................ 18

*Erickson v. Pardus*, 551 U.S. 89 (2007) ........................................ 5

*Floyd v. City of N.Y.*, 283 F.R.D. 153 (S.D.N.Y. 2012) ........................................ 6

*Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) ........................................ 12

*Hafer v. Melo*, 502 U.S. 21 (1991) ........................................ 9

*Holt v. Hobbs*, 135 S. Ct. 853 (2015)........................................ 10

*Howell v. New York Post Co., Inc.*, 81 N.Y.2d 115 (1993) ........................................ 17

*Koch v. Christie's Int'l PLC*, 699 F.3d 141 (2d Cir. 2012) ........................................ 5

*Ligon v. City of New York*, 288 F.R.D. 72 (S.D.N.Y. 2013)............................................ 7

*Lloyd v. City of N.Y.*, 43 F. Supp. 3d 254 (S.D.N.Y. 2014) ......................................... 10

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .................................................. 8

*Marcavage v. The City of New York*, 689 F.3d 98, 103 (2d Cir. 2012) ......................... 7

*Massaro v. Charles J. O'Shea Funeral Home,* 292 A.D.2d 349 (2d Dep't 2002) ........ 17

*New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*, 442 F.3d 101 (2d Cir. 2006)........... 20

*Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182 (2d Cir. 1996) ................ 5

*O'Shea v. Littleton*, 414 U.S. 488 (1974) ................................................................ 8

*Patrick v. LeFevre*, 745 F.2d 153 (2d Cir. 1984)...................................................... 12

*Plunkett v. NYU Downtown Hospital,* 21 A.D.3d 1022 (2d Dep't 2005)..................... 17

*Ronzani v. Sanofi S.A.*, 899 F.2d 195 (2d Cir. 1990) ................................................ 21

*Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, 547 U.S. 47 (2006).................. 6

*Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) .......................................... 11

*Scollar v. City of New York*, 160 A.D.3d 140 (1st Dep't 2018).................................. 17

*Smith v. Wade*, 461 U.S. 30 (1983)......................................................................... 20

*Soliman v. City of N.Y.*, No. 15-CV-5310 (PKC) (RER), 2017 U.S. Dist. LEXIS 50599 (E.D.N.Y. Mar. 31, 2017) ................................................................................ 13

*Stinson v. City of New York*, 282 F.R.D. 360 (S.D.N.Y. 2012) ................................... 7

*Turner v. Safley*, 482 U.S. 78 (1987) ...................................................................... 12

*United States v. El-Hage*, 213 F.3d 74 (2d Cir. 2000)............................................... 13

*Zargary v. City of N.Y.*, 412 F. App'x 339 (2d Cir. 2011) ......................................... 16

**Statutes and Other Sources**

RLUIPA, § 2000cc-1(a) ........................................................................................................ 11

28 U.S.C. § 1331 ................................................................................................................. 5

## PRELIMINARY STATEMENT

Plaintiffs Gehad Elsayed and Laila Ibrahim are Muslim women who wear the hijab, a religious headscarf that covers their hair, neck, and ears in front of any man who is not in their immediately family. The hijab is inextricably linked to both women and is, in essence, a part of each woman's physical identity. However, upon their respective arrests, both women were forced to remove their hijabs in front of male detainees and members of the New York City Police Department ("NYPD"). Though the NYPD has established revised policies with respect to headscarves for photographs of pre-trial detainees during arrest processing, the policy remains inconsistently applied. Though the new policy provided a purported accommodation for women who requested an accommodation to wear their hijabs by allowing them to request processing at a Mass Arrest Processing Center at One Police Plaza, such an alleged accommodation is inconsistently applied in practice and can add substantially to the amount of time in police custody. Furthermore, these photographs then remain digitally stored and viewable by men who are not in their immediate family. Such actions are in clear violation of Plaintiffs' constitutional and state-protected rights. The Defendants' motion contains numerous citations and case law but overlooks Plaintiffs' well-pleaded facts and misinterprets the governing legal standards. For the reasons stated herein, Defendants' Partial Motion should be denied in its entirety.[1]

## STATEMENT OF FACTS

Plaintiffs Laila Ibrahim and Gehad Elsayed are Muslim women who believe it is their religious obligation to wear a hijab—a headscarf that covers the ears, hair, and neck of a woman. (Compl. ¶ 28.) A hijab does not include covering the face in any way. (*Id.*) Muslim women who

---

[1] As the Defendants have not moved to dismiss monetary damages claims under the First Amendment, the case will proceed with respect to those claims regardless of the outcome of the pending motion. (Defs' Mem. of Law in Support of its Motion to Partially Dismiss the Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), hereinafter "Defs' Mot.", at 2 n.1.)

choose to wear the hijab believe it is their religious obligation not to expose their hair and neck to men that are not their immediate family members. (*Id.* ¶¶ 1, 28.) Such a belief is founded in the Quran, Sunnah, and Hadith. (*Id.* ¶¶ 29–30.) As such, a woman's hijab becomes a part of her. (*Id.* ¶ 1.) The hijab is worn at all times outside of the presence of a Muslim woman's immediate family—including for governmental issued I.D.s and passports. (*Id.* ¶ 32.)

Despite a policy that permits women to wear the hijab for identification photographs at precincts (the "Identification Photograph"), Muslim women who wear the hijab and are arrested in New York City have been forced to remove their hijab for both the Identification Photograph and again at central booking (the "Booking Photograph"). (*Id.* ¶¶ 2, 43–44.) As a result of their experiences, Plaintiffs Elsayed and Ibrahim filed suit on November 13, 2018 on behalf of themselves and other similarly situated women. (Dkt. No. 1.)

## 1. NYPD's Photographic Unit Standard Operating Procedures

The NYPD Photographic Unit, Photography Standard Operating Procedures ("Photo Unit SOP") provides specific instructions for all post-arrest processing photographs at both precincts and at central booking. (*Id.* ¶ 33.) The rules provide that photographs must be taken with the head straight, with the pre-trial detainee facing the camera. With respect to guidance for hair "[l]ong hair must be brushed or pushed away from the eyes." (*Id.* ¶ 34.) These instructions do not require the removal of religious head coverings. (*Id.* ¶ 36.) The photographs are then saved in a database and shared with other law enforcement databases. (*Id.* ¶ 37.)

In 2015, the NYPD issued Interim Order 29 (IO 29), changing its policy with respect to the removal of religious head coverings for Identification Photographs only; not during Booking Photographs. (*Id.* ¶¶ 46–49.)  During the Identification Photographs, women with religious head coverings may request transportation to the Mass Arrest Processing Center (MAPC), located at

2

One Police Plaza in Manhattan, regardless of the borough of their initial arrest. (*Id.* ¶ 46.) Transporting an arrestee to MAPC can substantially increase the processing time of an arrestee, and does not accommodate the request of Muslim women with respect to their Booking Photographs. (*Id.* ¶ 52.)  Though the Identification Photograph policy changed in 2015, the NYPD continues an ad-hoc practice of requiring the removal of religious head coverings for post-arrest processing of photographs at both the precinct and at central booking. (*Id.* ¶ 53.) Furthermore, the NYPD refuses to accommodate Muslim women with respect to a request to wear their hijabs during the Booking Photograph. (*Id.* ¶ 54.)

### 2. Searches at Police Facilities

After arriving at both the precinct and central booking, all arrestees are subjected to a custodial search. (*Id.* ¶ 38.) Though searches of women are conducted by female officers, because all non-strip searches are conducted in the same processing space, male police officers and/or male detainees are often present during the searches of Muslim women, in violation of their religious beliefs. (*Id.* ¶ 39.)

### 3. Gehad Elsayed

Ms. Elsayed is an observant Muslim woman who wears the hijab. Pursuant to her religious beliefs, Ms. Elsayed does not show her hair to men who are not part of her immediate family. (*Id.* ¶ 58.) Ms. Elsayed, whose position at a car dealership requires that she be in frequent communication with the NYPD, has been arrested three separate occasions prior to the arrest at issue in this case. These prior arrests occurred in 2012, 2014, and 2017. (*Id.* ¶¶ 60–61.) During her 2012 arrest, Ms. Elsayed was required to remove her hijab while being photographed both at the precinct and at central booking. (*Id.* ¶ 62.) Though she informed the officers that such removal in the presence of men not in her immediate family was against her religious beliefs, the

officers refused to accommodate her. (*Id.* ¶ 63.) They did allow her to be photographed by a female officer in a private room. (*Id.* ¶ 64.)  However, when she arrived at central booking, she was forced to remove her hijab in front of male officers and detainees, despite informing the officers that it was against her religious beliefs. (*Id.* ¶ 65.) During her April 2014 arrest, Ms. Elsayed was permitted to wear her hijab for the photograph at the precinct but not at central booking. (*Id.* ¶ 67.) Most recently, on March 14, 2018, Ms. Elsayed was arrested for allegedly driving with a suspended license. (*Id.* ¶ 69.) Though she was able to keep her hijab on for her photograph at the precinct, she was again forced to remove her hijab at central booking. (*Id.* ¶¶ 71–72.) She was also mocked when she told the officers that it was against her religion to remove her hijab. (*Id.* ¶ 75.) Ms. Elsayed continues to fear enduring the extreme shame of being seen without her hijab by men outside of her family if she is arrested in the future. (*Id.* ¶ 68.)

### 4. Laila Ibrahim

Ms. Laila Ibrahim, a stay-at-home mother of three who has been wearing her hijab for twenty years, was arrested on May 5, 2018. (*Id.* ¶¶ 86–87.) She was denied access to a translator and forced to remove her hijab at the precinct, even though she informed the officer that it was a violation of her religious beliefs. (*Id.* ¶¶ 98–103.) She was told that she would not be allowed to put her hijab back on. (*Id.* ¶ 108.) She was patted down in front of male officers and arrestees. (*Id.* ¶ 109.) Ms. Ibrahim's hijab was thereafter also forcibly removed while at central booking and during her Booking Photograph. (*Id.* ¶ 114.) She felt violated, humiliated, and exposed. (*Id.* ¶ 127.)

## LEGAL STANDARD

Defendants have alleged that this Court does not have jurisdiction over certain state law claims, and therefore those claims must be dismissed pursuant to Rule 12(b)(1) for lack of

subject-matter jurisdiction. Though it is unclear which claims the Defendants are referring to, dismissals pursuant to 12(b)(1) are difficult where cases involve federal question jurisdiction, which provides district courts with "original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States." 28 U.S.C. § 1331. "In federal question cases, the very statute that creates the cause of action often confers jurisdiction as well—that is, the claim 'arises under' the same federal law that gives the plaintiff a cause of action." *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182 (2d Cir. 1996).

With respect to Rule 12(b)(6), "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Aegis Ins. Servs., Inc. v. 7 World Trade Co*., 737 F.3d 166, 176 (2d Cir. 2013) ("In reviewing a dismissal pursuant to Rule 12(b)(6), we . . . accept all factual allegations in the complaint as true. . . .") (alteration and internal quotation marks omitted). Further, "[f]or the purpose of resolving [a] motion to dismiss, the [c]ourt . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T&M Prot. Res., Inc*., 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). The Court must also accept facts alleged "upon information and belief" "where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (citations omitted) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009)); *see also Boykin v. KeyCorp*, 521 F.3d 202, 215 (2d Cir. 2008).

Based on this view of the allegations, if there are "enough facts to state a claim to relief that is plausible on its face," the Court must deny the motion to dismiss. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *Arista Records*, 604 F.3d at 120. A claim is plausible if

it contains enough factual allegations, taken as true, "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 570. The motion to dismiss standard is not a "heightened pleading standard." *Id.* at 569 n.14.

## ARGUMENT

## POINT I:
## PLAINTIFFS HAVE STANDING
## TO PURSUE INJUNCTIVE AND DECLARATORY RELIEF

### A. Standing, Generally

Ms. Elsayed has been arrested on four occasions and, on each occasion, has been forced to remove her hijab during the initial arrest process. Ms. Elsayed's repeated experiences are the precise repeated police action that led Judge Scheindlin in the *Floyd* stop-and-frisk litigation to find that a Plaintiff's risk of future injury was "'real and immediate,' not 'conjectural' or 'hypothetical.'" *Floyd v. City of N.Y.*, 283 F.R.D. 153, 169 (S.D.N.Y. 2012) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). Plaintiff Elsayed's experiences are sufficient to confer standing for injunctive relief in this case. "[T]he presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement." *Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, 547 U.S. 47, 53 n.2 (2006).

### B. The Prospect of Future Harm to Plaintiffs is Not Speculative, but Real and Imminent

#### 1. Ms. Elsayed's Repeated Arrests Confer Standing for Injunctive Relief

Ms. Elsayed has been arrested on four occasions. (Compl. ¶¶ 61, 69.) Three of those occasions were related to her employment at a car dealership in which she is in frequent contact with the police. (*Id.* ¶¶ 59–60.) Ms. Elsayed remains employed at the car dealership. (*Id.* ¶ 59.) Thus, the likelihood of another arrest is not remote, but real and imminent.

"It is not the materialization of the feared risk itself that must be 'certainly impending.'"

6

*Amin v. Colvin*, 301 F. Supp. 3d 392, 400–01 (E.D.N.Y. 2017) (citations omitted). Rather, "only the exposure must be imminent . . . ." *Id.* "The possibility of recurring injury ceases to be speculative when actual repeated incidents are documented." *Ligon v. City of New York*, 288 F.R.D. 72, 81 (S.D.N.Y. 2013); *see also Stinson v. City of New York*, 282 F.R.D. 360, 382 (S.D.N.Y. 2012) ("[T]he fact that several Plaintiffs in this case have received multiple summonses alleged to have been issued without probable cause suggests the potential for future harm to rise above the speculative level."); *Aguilar v. Immigration & Customs Enforcement Div. of the United States Dep't of Homeland Sec.*, 811 F. Supp. 2d 803, 828 (S.D.N.Y. 2011) (finding standing in a case where one set of plaintiffs had allegedly been subject to two unlawful searches and other plaintiffs feared repeat injury because the searches were part of defendants' "condoned, widespread, and ongoing" practice).

Cases cited by Defendants are inapposite. For example, in *Marcavage v. The City of New York*, the Court denied equitable relief for a case involving protests of the Republican National Convention. The Court reasoned that "[n]either party's national convention will be in New York City in 2012, and there is no prospect that a national convention will be coming anytime to the Garden, or that, if one did, similar policies regarding pedestrian traffic and protesters would be enacted or enforced." 689 F.3d 98, 103 (2d Cir. 2012). Here, Plaintiffs have alleged the same inconsistently applied policy which subjected them and continues to potentially subject them to the forced removal of their hijabs during arrest processing. Ms. Elsayed's numerous experiences with the same unconstitutional conduct by the police is sufficient, at this early stage of litigation, to establish standing for injunctive relief. This is sufficient to confer standing for a class action seeking injunctive relief. *See Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck—Medco Managed Care, L.L.C.*, 504 F.3d 229, 241 (2d Cir. 2007) ("only one of the named

Plaintiffs is required to establish standing in order to seek relief on behalf of the entire class.").

### 2. The Likelihood of Future Harm is Actual

"To qualify for standing, a claimant must present an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged behavior; and "'likely' to be redressed by a favorable ruling." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 733 (2008). Moreover, plaintiffs seeking injunctive relief must establish a fourth element to have standing, namely a "real and immediate threat of repeated injury" demonstrated by more than "past exposure to illegal conduct." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974)). In other words, it must be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (citations omitted).

As stated, Ms. Elsayed has been repeatedly arrested primarily due a job that puts her at risk of repeated contact with the NYPD (Compl. ¶ 60.)  On four separate arrests, her hijab has been forcibly removed in front of unwanted men during the arrest processing and photographing process. Courts have repeatedly found such repeated conduct compelling in analyzing the likelihood of future harm. *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974) (holding a court may consider a past injury as "evidence bearing on whether there is a real and immediate threat of repeated injury."); *Aguilar v. Immigration & Customs Enforcement Div. of the U.S. Dep't of Homeland Sec.*, 811 F.Supp.2d 803, 828 (S.D.N.Y.2011) (finding standing in a case where one set of plaintiffs had allegedly been subject to two unlawful searches and other plaintiffs feared repeat injury because the searches were part of defendants' "condoned, widespread, and ongoing" practice). Furthermore, in *McLennon v. City of New York*, the Court dismissed *without prejudice*, claims related to suspicionless searches at seizures at unconstitutional vehicle checkpoints. In so

holding, the Court reasoned that the Plaintiffs had failed to allege that any of the individuals had been stopped on numerous occasions. *McLennon v. City of N.Y.*, 171 F. Supp. 3d 69, 106 (E.D.N.Y. 2016) ("More importantly, in *Floyd*, like *Ligon* and *Stinson*, at least one plaintiff had been subjected to the unlawful police practice multiple times.")

<u>POINT II:</u>
**PLAINTIFFS' RLUIPA CLAIMS MUST SURVIVE**

As an initial matter, Defendants are simply incorrect that "Plaintiffs' Third Cause of Action seeks . . . monetary relief against Defendants for violations under RLUIPA." (*See* Defs' Mot. at 8.) Plaintiffs seek monetary relief only as related to claims brought pursuant to 42 U.S.C. § 1983 for violations of the First and Fourteenth Amendments and a claim for Intentional Infliction of Emotional Distress. *Hafer v. Melo*, 502 U.S. 21 (1991). With respect to their claims pursuant to the Religious Land Use and Institutionalized Person Act (RLUIPA), Plaintiff did not specify seeking monetary relief. (Compl. ¶¶ 168–180.)

**A.  Plaintiffs' RLUIPA Claims are Not Moot**

Defendants argue that "an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief. (Def's Mot. at 9) (citing *Shepherd v. Goord*, 662 F.3d 603, 610 (2d Cir. 2011)). However, Defendants' argument must fail. As an initial matter, Plaintiffs are not inmates and the precinct and central booking locations are not prison facilities, as discussed in further detail below.

RLUIPA provides, in part, "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person - (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." §2000cc-1(a).

9

RLUIPA specifically protects the religious rights of individuals are in the control of the City.

Defendants have not provided a modicum of reasoning as to why the requirement that women remove their hijab in the presence of men in the arrest process is "in furtherance of a compelling government interest" or that it is the "least restrictive means of furthering that compelling governmental interest." As the Supreme Court recently reminded the courts, "[s]everal provisions of RLUIPA underscore its expansive protection for religious liberty." *Holt v. Hobbs*, 135 S. Ct. 853, 860 (2015).

 "RLUIPA places a much higher burden on defendants than the analysis under the First Amendment, 'which require[s] only that a burden be 'reasonably related to legitimate penological interests.'" *Lloyd v. City of N.Y.*, 43 F. Supp. 3d 254, 263 (S.D.N.Y. 2014) (citing *Pugh v. Goord*, 571 F. Supp. 2d 477, 503–04 (S.D.N.Y. 2008)). Here, "Defendants have not answered, and so have not yet articulated any 'legitimate penological interest' or 'compelling state interest' that would justify the alleged 'substantial burden' on Plaintiffs' sincerely held religious beliefs under the Free Exercise Clause or RLUIPA." *Lloyd*, 43 F.Supp. 3d at 263.

Instead, Defendants seem to argue that the transfer of Plaintiffs from precincts to central booking somehow moots Plaintiffs' RLUIPA claims. However, in doing so, Defendants' are ignoring the very foundations of a RLUIPA claim. Defendants' claims regarding mootness are not applicable where, as here, Plaintiffs argue the immanency and potential future harm by another arrest, as argued above. Ms. Elsayed is not currently incarcerated and her complaint does not relate to a specific facility. Instead, it relates to the Defendant City of New York's arrest process in which she has repeatedly been forced to remove her hijab in violation of her religious beliefs.

The cases cited by Defendants are distinguishable in that Plaintiffs here were not inmates

but uncharged arrestees at the time of their arrest and processing, and they were not held in a prison or correctional facility. The Second Circuit has held that the threshold for impinging upon the constitutional rights of those in prisons is different—and lower—than the threshold for those in jails." *Lindsey v. Butler*, No. 11 CIV. 9102 RWS, 2013 WL 3186488, at *2 (S.D.N.Y. June 24, 2013). The Second Circuit defined a "prison" as a facility that "house[s] those convicted of the most serious crimes," *Shain v. Ellison*, 273 F.3d 56, 65 (2d Cir.2001) (quoting Black's Law Dictionary 1213 (7th ed.1999)), and defined a "jail," as "a place where persons awaiting trial or those convicted of misdemeanors are confined." *Id. Lindsey v. Butler*, No. 11 CIV. 9102 RWS, 2013 WL 3186488, at *2 (S.D.N.Y. June 24, 2013).

Defendants' cited cases further differ in that the injunctive relief requested was mooted upon a transfer to a different correctional facility. Here, the future injury is a re-arrest and re-processing which would cause the Plaintiffs' rights to once again be violated. For example, *Salahuddin v. Goord*, the Plaintiff made allegations of a violation to his right to freely exercise his religion at specific correctional facilities. (Defs' Mot. at 9.) However, at the time the case was reviewed by the Circuit, Mr. Salahuddin had been transferred to another facility not specified in his complaint.  467 F.3d 263, 272 (2d Cir. 2006) ("Salahuddin is presently incarcerated in Oneida Correctional Facility, which is not one of the prison facilities in which the actions complained of here occurred.").

Furthermore, the injury is ongoing in that the photographs of Plaintiffs without their hijabs remain in the NYPD's system indefinitely, allowing any NYPD official with access to view the Plaintiffs' photographs without their hijabs.  Each viewing of a picture displaying Ms. Elsayed and Ms. Ibrahim without their hijab is a new injury, and Plaintiffs are thus injured as long the photographs depicting them without their hijab remain viewable by men who are not in

their immediate family.

### POINT III:
**PLAINTIFFS HAVE ADEQUATELY ALLEGED THAT NYPD'S PHOTOGRAPH POLICY VIOLATES THEIR CONSTITUTIONAL RIGHTS**

"The Free Exercise Clause of the First Amendment, which has been applied to the States through the Fourteenth Amendment, provides that 'Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ."  *Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 531 (1993) (citing see *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940)). The Free Exercise Clause of the First Amendment is an "unflinching pledge to allow our citizenry to explore . . . religious beliefs in accordance with the dictates of their conscience." *Patrick v. LeFevre*, 745 F.2d 153, 157 (2d Cir. 1984). "Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause." *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003).

The Second Circuit recently reiterated the standard for a prisoner's claim of a violation of their First Amendment rights in the context of a generally applicable prison policy or regulation. *Burns v. Martuscello*, 890 F.3d 77, 86–87 (2d Cir. 2018). The *Turner v. Safley* standard requires examination of the following factors:

> (1) whether the policy or regulation is "reasonably related to legitimate penological interests;" (2) whether "there are alternative means of exercising the right that remain open;" (3) "the impact that accommodation of the asserted constitutional right will have on guards and inmates;" and (4) whether "ready alternatives" in prison policy that would accommodate the right exist, indicating that the policy is "an exaggerated response to prison concerns."

*Id.* (citing *Turner v. Safley*, 482 U.S. 78, 89–91 (1987)). Furthermore, where the case is brought on behalf of pre-trial detainees, "the presumption of innocence" provides that, "the legitimate penological interests served [by the regulation] must go beyond the traditional objectives of

12

rehabilitation and punishment[]" as the Government has no legitimate interest in the punishment or rehabilitation of a person presumed innocent. *United States v. El-Hage*, 213 F.3d 74, 81 (2d Cir. 2000) (internal quotations and citations omitted).

### A. NYPD's Photograph Policy is Not Reasonably Related to a Legitimate Penological Interest

As pretrial detainees, Ms. Elsayed and Ms. Ibrahim could not have been lawfully subjected to any form of penological conduct. The City's interests at the post-arrest and pre-arraignment stage is safely transporting the detainee between facilities and accurately identifying the detainee. As the policy and practice now stands, a woman must remove her hijab for the central booking photograph. After her photograph is taken, her hijab is returned to her and she is permitted to put it back on for the duration of the arrest processing. She is then directed to a holding cell to wait until an officer calls her name out and walks her to the courtroom for arraignment—all while wearing hijab. Defendants do not argue that hijab may encourage escape or that the arrestee becomes a flight risk if permitted to keep the hijab on for the photograph.

To be clear, a hijab is a scarf that covers only the hair and neck, and would never cover the face of the individual woman. Thus, Plaintiffs' primary objection relates to the NYPD's policy of photographing their faces without their hijabs, which is then preserved for future viewing by anyone in the NYPD. Plaintiffs instead request a policy that allows them to wear their hijabs for the photograph after a private search of their person by a female officer. The photograph serves no further purpose other than accurate identification and may be adequately achieved by allowing detainees to wear their hijab during the identification and booking photographs. This distinction is in accordance with *Soliman*, where the Plaintiff argued that the removal of the hijab could never be constitutional. *Soliman v. City of N.Y.*, No. 15-CV-5310 (PKC) (RER), 2017 U.S. Dist. LEXIS 50599, at *23–24 (E.D.N.Y. Mar. 31, 2017). The Court in

*Soliman* held that "the NYPD had no rational basis for refusing to accommodate [plaintiff's] religious beliefs." *Id.* at 24. Here, the City can similarly point to no legitimate penological interest in requiring women remove the hijab for both the search and the photograph. The photograph has no penological interest and thus fails the first prong of the *Turner* test.

The City's policy is a direct violation of Plaintiffs' religious beliefs. The City argues that "the only alternative means of exercising this right would be to allow arrestees to keep their religious coverings on. However, this alternative would frustrate the City's legitimate interest in having a photographic record of arrestees from which a later identification can be made." (Def's Mem. at 14.) This alternative is precisely the right Plaintiffs must be able to exercise. Plaintiffs cannot, according to their religious beliefs, have a photograph viewed by men depicting them without their hijab. The exercise of this right does not, as the City argues, interfere with its legitimate interest. Both an Identification Photograph and a Booking Photograph should, and indeed would, accurately depict the detainee's appearance if taken with the hijab in place as it would be throughout the duration of their detention. The photographic record will certainly differ from the detainees more consistent appearance of wearing the hijab if the detainee is required to remove the hijab and reveal her hair for the photograph. Again, Plaintiffs are not asking to mask their faces or cover any identifying features itemized in the Photographic Unit SOP. The only rational method of ensuring the greatest fidelity to the pre-trial detainee's appearance is to allow them to keep the hijab in place while taking the photograph, just as they would be allowed to keep the hijab on while otherwise detained.

**B. Even If Rational Basis Applies, the Policy is Not Reasonably Related to a Recognized City Interest**

The City's Photography Policy for pre-trial detainees is not reasonably related to a recognized City interest. Where, as here, pre-trial detainees are being processed for identification

purposes at both the precincts and central booking, proper identification of these individuals would mean allowing women to be photographed with their hijabs on. Any security concern can be handled by a female officer conducting a private search of the pre-trial detainee's person.

Defendants' argument otherwise is twofold: (1) that the current NYPD Photograph Policy already accommodates a religious accommodation regarding headscarves by allowing individuals to "remove their religious head covering and have their photograph taken in private at a separate location" (Def's Mem. at 13); and (2) that it has a legitimate interest requiring inmates to remove headwear for identification photographs. (Def's Mem. at 14.)

With respect to Defendants' first argument, the current accommodation allows the detainee to take the photograph in MAPC—located at 1 Police Plaza in Manhattan, regardless of the borough of arrest—without their hijab by a female officer. (Compl. ¶ 46.) Notwithstanding the issues of inevitable delays when a woman opts to take her Identification Photograph at MAPC, preserving the accommodation would require that the photograph then be viewable only by female officers. The administrative burden of creating a database of photographs depicting unveiled adherents that reliably restricted access only to female officers, and assuring compliance with that restriction, far outweighs the purported risks of misidentification of a detainee whose photograph was taken while their hijab was in place.

With respect to their second argument, the City posits that, with respect to Booking Photographs, its legitimate interest is in "having a photographic record of arrestees from which a later identification can be made." (Defs' Mot. at 14). In order to identify the arrestee, the officers in central booking rely upon the photo in the movement slip. That photo is one of a frontal view of the arrestee without any obstruction of the face. Furthermore, an arrestee who wears a hijab is better identified in her hijab than without it.  Therefore, a photograph of a pre-trial detainee is

more accurate as an identification tool with their hijab on.

Plaintiffs are not denying that a photographic record is a legitimate interest. However, the City's interest in a photographic record of women *without their hijabs* is not rationally related to a legitimate interest in such a photographic record. A hijab is an identifying feature which can be used to identify the individual woman at all times during detention. In fact, in allowing women to wear their hijabs at all other phases of the detention process, the City is allowing and accommodating the women based on their sincerely held religious beliefs.

Defendants' citation to *Zargary v. City of New York* is not applicable in the pre-trial detainee context. Instead, *Zargary* stands simply for the proposition that, for inmates who are convicted and serving time, there is a security-based interest in obtaining a photograph of the individual unencumbered by a headscarf. This is not relevant in the instant case because this case involves pre-trial detainees only. *Zargary v. City of N.Y.*, 412 F. App'x 339, 342 (2d Cir. 2011) (explaining the reasoning is based "maintaining prison and prisoner safety and security"). Moreover, Defendants' claim that inmates could trade clothes and change their appearance is not applicable in the context of a detention center where arrestees are not informed of the charges that are brought against them and therefore there is no incentive to trade appearances with other arrestees.

Taking the current accommodation to its logical conclusion displays the City's fundamental misunderstanding of the accommodation requested. The Plaintiffs may not have their unveiled hair seen by men outside of their immediate family. The City's interest is not served by its current accommodation, nor would the City conceivably put in place the structure by which it would maintain the accommodation. The City's interest is served by allowing photographs to be taken with the hijab in place covering the woman's hair and viewed for

16

accurate identification without further restriction. Thus, Defendants have not offered a compelling governmental interest nor have they shown the practice is narrowly tailored to advance any interest.

### POINT IV:
### PLAINTIFFS ADEQUATELY PLED INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS UNDER NEW YORK STATE LAW

"One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress." Restatement [Second] of Torts § 46[1] (1965). The Court of Appeals has adopted this formulation and New York has analyzed it using "[t]he tort [in] four elements: (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Howell v. New York Post Co., Inc.*, 81 N.Y.2d 115, 121 (1993). While the application of the requirement of outrageous conduct is strict, that is not the case when there is a "deliberate and malicious campaign of harassment or intimidation." *Scollar v. City of New York*, 160 A.D.3d 140, 146 (1st Dep't 2018). "The outrageous nature of the conduct can be established when it arises from the abuse of a position of power." *Id.* New York courts have found that "[w]hile evidence of a specific medical diagnosis or course of treatment may be relevant to the issue of damages, it is not essential to the prosecution of [ ] an inherently genuine claim." *Plunkett v. NYU Downtown Hospital,* 21 A.D.3d 1022, 1023 (2d Dep't 2005); *see also Massaro v. Charles J. O'Shea Funeral Home,* 292 A.D.2d 349, 351 (2d Dep't 2002) (finding that "the fact that [plaintiff] ha[d] not sought psychological counseling for his alleged injuries, while relevant to the issue of damages, [did] not necessarily preclude his recovery").

### A.  Plaintiffs Can Claim that the Individual Officers Caused IIED

Though correct as to the City, Defendants erroneously argue that Plaintiffs' claim for intentional infliction of emotional distress is barred against the individual officers. *Scollar*, 160 A.D.3d at 49 (finding plaintiffs stated claim for intentional infliction of emotional distress against NYPD Sergeant). Neither case the City cites held that the individual officers were not subject to an IIED claim. Plaintiffs did not plead IIED against the City and their claim should survive as to the individual Defendants.

### B.  Defendants' Conduct was Extreme and Outrageous

These Defendants are liable for intentional infliction of emotional distress for forcing Plaintiffs to appear in photographs without their hijab. The court in *J.H. v. Bratton* found that the plaintiff plausibly alleged behavior that was extreme and outrageous where

> ten male officers of the NYPD, while they had Plaintiff in their custody, forced Plaintiff to remove her headscarf in their presence and the presence of five male detainees (an act that, the Court infers, was akin to being stripped naked, from Plaintiff's religious perspective) in violation of NYPD policy and despite Plaintiff's repeated objections on religious grounds, and then made sarcastic and demeaning comments about her physical features after she removed her headscarf.

248 F. Supp. 3d 401, 406 (E.D.N.Y. 2017). Plaintiffs endured the taking of and dissemination of their image without the hijab which continuously cause them immense emotional and psychological harm. *See Doe v. Doe*, No. 16 Civ. 0332 (NSR), 2017 U.S. Dist. LEXIS 109692, 2017 WL 3025885, at *7 (S.D.N.Y July 14, 2017) (granting plaintiff's motion for summary judgment on intentional infliction of emotional distress claim where plaintiff was filmed during sexual encounter without her consent.). Defendants' conduct rose far and above hurting Plaintiffs' feelings and violated a core tenet of their faith.

Despite notifying the arresting officer of her religious beliefs, Ms. Elsayed's was forced to take her identification photograph "in the presence of seven male officers, a male

photographer, and approximately twelve to fifteen male detainees." (Compl. ¶ 73.) Ms. Elsayed was crying while the officer mocked her and told her to "cut out the crying and take that thing off." (*Id*. at ¶ 80.) The officer was well aware of the impact of his commands and persisted in forcing Ms. Elsayed to remove her hijab. As in *Scollar*, the officer's use of his position of power when faced with Ms. Elsayed's obviously distraught pleas make his conduct rise to level of outrageousness that states a claim for relief. Further, Ms. Elsayed's claim is not speculative or conclusory as she requested medical attention for a panic attack she suffered while in custody. The officers denied her request and threatened her with additional time in Brooklyn Central Booking. (Compl. ¶ 84.) Based on the officer's outrageous conduct and the extreme effect it had on Ms. Elsayed, the claim of intentional infliction of emotional success as to Ms. Elsayed must survive.

Ms. Ibrahim likewise states a plausible claim for intentional infliction of emotional distress. Officer Brodie, using her position of power and despite being informed of Ms. Ibrahim's religious adherence, ordered two officers to physically remove her hijab for her identification photograph. Compl. ¶¶ 104–105.) Further, Ms. Ibrahim was forced to sit exposed without her hijab for several hours. (*Id*. ¶ 108.) Like Ms. Elsayed, Ms. Ibrahim was not given medical attention despite her profuse cries and shortness of breath. (*Id*. ¶ 107.) For these reasons, the claim of intentional infliction of emotional distress against Officer Brodie must survive.

Ms. Ibrahim also states a valid claim of intentional infliction of emotional distress against the officers at Central Booking. As at the precinct, Ms. Ibrahim's hijab was forcibly removed in front of over a dozen men. (*Id*. ¶ 114.) Ms. Ibrahim was additionally accused of being a terrorist. (*Id*. ¶¶ 118–121.) The conduct of the officers at Central Booking similarly rises to a level which cannot be tolerated in a civilized society. After her release, Ms. Ibrahim felt compelled to cut her

hair short, as it had been exposed to the gazes of men outside her immediate family. (*Id.* ¶ 127.) This act symbolizes the trauma she endured exemplifies that her experiences caused more than just hurt feelings. For these reasons, Ms. Ibrahim has also stated a claim of intentional infliction of emotional distress against the officers at Central Booking.

<u>POINT V:</u>
**THE INDIVIDUAL DEFENDANTS ARE NOT IMMUNE FROM PUNITIVE DAMAGES**

Defendants argue that the City of New York is immune from punitive damages. (Defs' Mot. at 19.) However, Plaintiffs requested the imposition of punitive damages against the individual defendants, not the City of New York. "Although a municipality itself is immune from a claim for punitive damages, that immunity does not extend to a municipal official sued in his individual capacity." *New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*, 442 F.3d 101, 122 (2d Cir. 2006) (internal citations omitted). It is well established that a plaintiff is entitled to punitive damages against individual officers "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983).

Here, Plaintiff pled individual defendant officers' actions including, *inter alia*, being called a terrorist, Compl. ¶¶ 118–121, ignoring requests for processing with female officers, *Id.* ¶ 63, sexual comments made by male officers, *Id.* ¶ 66, and being photographed without their hijabs in front of numerous men even after expressing that it was a violation of their religious beliefs, *Id.* ¶¶ 75–82. At the motion to dismiss stage, where Plaintiff has properly pled the "Defendants' unlawful conduct was willful, malicious, oppressive, and/or reckless" and provided a factual basis for that claim, "it is premature to dismiss the request for punitive damages as against the Individual Defendants in their individual capacities." *Anderson v. City of N.Y.*, No. 1:16-cv-01051 (GBD) (KHP), 2017 U.S. Dist. LEXIS 8358, at *68–69 (S.D.N.Y. Jan. 19, 2017).

**CONCLUSION**

For the foregoing reasons and based on the pleadings and papers filed in this action, Defendants' motion should be denied in its entirety. Should the Court perceive deficiencies with respect to any of her claims, Plaintiff requests the opportunity to amend her Complaint to amplify the allegations. *See Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990) ("When a motion to dismiss is granted, 'the usual practice is to grant leave to amend the complaint.'") (citation omitted).

Dated: New York, New York
       June 17, 2019

Respectfully submitted,

BELDOCK LEVINE & HOFFMAN LLP

By: _____
       Jonathan C. Moore
       Luna Droubi
99 Park Avenue, PH/26th Floor
New York, New York 10016

THE ABOUSHI LAW FIRM, PLLC

By: _____
       Tahanie A. Aboushi
1441 Broadway Suite 5036
New York, New York 10018

*Attorneys for Plaintiffs Gehad Elsayed and Laila Ibrahim, on behalf of themselves and others similarly situated*

21